IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Clinton Decarlo Cowles,  ) | |
|     Plaintiff,  ) | |
| ) | |
| v.  ) | 1:10cv836 (LMB/IDD) |
| ) | |
| John Kulplinski, et al.,  ) | |
|     Defendants.  ) | |

## MEMORANDUM OPINION

Clinton Decarlo Cowles, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, principally alleging that he was the victim of the use of excessive force during his former incarceration at the Virginia Peninsula Regional Jail ("VPRJ"). Plaintiff has submitted a request to proceed in forma pauperis in this action. After reviewing plaintiff's complaint, the claims against the defendants will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[1]

I.

Plaintiff alleges that his rights under the Eighth Amendment were violated when, without

---

[1] Section 1915A provides:

> (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>     (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

provocation, Officer Smith maliciously assaulted him on March 16, 2010. Plaintiff states that he received many bruises and contusions, and possibly a broken hand, in the incident. Plaintiff alleges that Officer Smith acted with a criminal state of mind and malicious intent to do plaintiff harm, and contends that Smith was relieved at another facility for similar reasons. Plaintiff received no medical attention for his hand injury for a week, and he was never notified of the result of an x-ray that was taken. On July 7, 2010, plaintiff was prescribed the antidepressant Zoloft, a sleep medication called Trazadone, and Stelazine for his "paranoia and suspiciousness," all allegedly due to the incident with Officer Smith.

Plaintiff further alleges that after the incident, he was moved to segregation, where the air conditioners were malfunctioning. Plaintiff claims that Captain Green approved the provision of two blankets, but Sgt. Carter deprived plaintiff of one of the blankets, stating, "It's part of your punishment." Plaintiff later was transferred to the medical department, where he was diagnosed with pneumonia. Lastly, plaintiff alleges as a result of the incident with Officer Smith, he was released from his trustee job, to which plaintiff claims entitlement as a liberty interest.

As defendants to this § 1983 action, plaintiff names Officer Smith, Sgt. Carter, VPRJ Administrator Kulplinski, and Captain Arnold, and as relief he seeks monetary damages.

Plaintiff has supplied a number of exhibits with his complaint. Among them is the incident report prepared by Officer Smith concerning the event at issue, in which Smith states the following:

> On [March 16, 2010], inmates Cowles, Clinton came up to the desk, and asked if I would call medical for his medication. I told Cowles no, I would not call because he took his medication this morning and if she needed him she would call. He then stated, 'I need to get my Sergeant.' I replied 'no.' Inmate Cowles walked away from the desk and started talking to another inmate. I looked his way and he said 'yeah I'm talking about you bitch.' I said 'whatever, as long as you

> stay over there where you are.' Inmate Cowles then gets up and says 'let's go in the closet then.' I said no, 'I'm not going in the closet, if your [sic] gonna do something, do it right here.' He then walks up and gets in my face. I pushed him back out [sic] my face and inmate Cowles went upstairs to his cell and puts his sneakers on and runs back down stairs. I called for the unit to lock down, and I went behind the desk to secure the doors and let Officer L. Richardson in the unit from the rec yard. Officer Richardson said, 'go out [sic] the block I have it.' As I started walking to the vestibule door, inmate Cowles walked to where I was and got in my face in a fighting stance stating 'I'm gonna fuck you up for putting your hands on me.' I said 'you need to back up.' Inmate Cowles punched me in the mouth with a closed fist and charged me. We went to the floor near the bathroom with Inmate Cowles on top of me. He made an attempt to hit me again, but the strike was blocked by my right forearm. Inmate Cowles then began to dig his nails in my face causing several minor scratches beneath my nose. Officer Richardson called for assistance and made an attempt to break us up. After several officers arrived and secured the unit I was escorted out of the unit by Cpl Nunnally. Neither myself nor Inmate Cowles required any medical treatment. I went to the Magistrate office to file assault charges against Inmate Cowles.

Incident Rep. No. 243, Summ. of Events.

Plaintiff has also supplied a summary of his disciplinary proceedings, which reflects that the Hearing Committee found plaintiff guilty of the major violation of assault and battery on a staff member for three reasons: (1) the foregoing recitation of facts by Officer Smith was evidence that the violation occurred; (2) Cowles in his hearing statement admitted to grabbing Officer Smith; and (3) Cowles would not say what started his argument with Officer Smith, and provided a statement that was "mostly self serving[,] taking little responsibility and blaming Officer Smith for starting the fight. Regardless of the circumstances inmate Cowles was just as aggressive as his depiction of Officer Smith." Incident Rep. at 4. As the result of his disciplinary infraction, plaintiff was assigned to serve 60 days disciplinary segregation, and his security classification was increased from level 1 to level 2. Id. at 5.

3

Cowles appealed his disciplinary conviction, and on March 30, 2010, the Director of Security concurred with the findings of the Hearing Committee, noting that based on Cowles' own statement, he could have avoided the altercation with Officer Smith by staying in his cell when he went there to put on his shoes. Despite the admitted fact that two other inmates tried to stop him, Cowles returned to resume the confrontation with Officer Smith. The Director found that plaintiff thereby "put himself in this position" and escalated the situation. Moreover, plaintiff "further stated that [he] grabbed Ofc Smith in a bear hug and took him to the ground" which was "clearly an assault on an officer." Incident Rep. at 6. On July 31, 2010, the Director noted that after receiving additional information, he decided to dismiss all charges. Id. at 7.

## II.

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129. S. Ct. at 1949-1950.

Courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990), cited with approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). Where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." U.S. ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d., 593, 596 (E.D. Va. 2004) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

## III.

In determining whether a complaint states an Eighth Amendment claim that defendants used excessive force, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also, Whitley v. Albers, 475 U.S. 312, 320-21 (1986). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not significant injury is evident." Hudson, 503 U.S. at 9. The extent of injury suffered by the inmate is relevant to the Eighth Amendment inquiry, both because it may suggest whether the use of force plausibly could have been thought necessary in a particular situation, Whitley, 475 U.S. at 321, and because it may provide some indication of the amount of

force applied. Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175, 1178 (2010) (rejecting the notion that an excessive force claim involving only *de minimis* injury is subject to automatic dismissal). The Eighth Amendment generally excludes from constitutional recognition *de minimis* uses of physical force, Hudson, 503 U.S. at 9, and an inmate who complains of a "push or shove" that causes no discernable injury "almost certainly" fails to state a valid excessive force claim. Id., quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). Nonetheless, "[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 130 S.Ct. at 1178-79.

Here, as to plaintiff's central claim that his rights under the Eighth Amendment were violated by Officer Smith's allegedly excessive use of force, a conflict plainly exists between the bare allegations in the complaint that Officer Smith's actions were unprovoked and intended maliciously to harm plaintiff, and the descriptions contained in the exhibits plaintiff has supplied. When that conflict is resolved in favor of the exhibits, as it appropriately must be, Gulf Ins. Co., 313 F. Supp. 2d. at 596, it is apparent that no violation of plaintiff's Eighth Amendment rights occurred. According to both the incident report and the findings of the disciplinary committee, plaintiff was at least as aggressive as Officer Smith in initiating their physical altercation. In the incident report, Officer Smith states that after he declined to call the medical department as plaintiff requested, plaintiff "g[ot] in [Smith's] face" and then left the block to go to his cell and put his sneakers on. When plaintiff returned, Officer Smith started walking toward the vestibule to leave the block, and plaintiff confronted him "in a fighting stance," stated that he was going to "fuck [Smith] up," and then punched Smith in the mouth with a closed fist and charged at him. The two went to the floor

with Cowles on top, and Cowles attempted to hit Smith again and began to dig his fingernails into Smith's face. "Several officers" were required to secure the unit as the result of this incident. Under these circumstances, it is apparent that Officer Smith did not apply force to plaintiff "maliciously and sadistically to cause harm," and instead was attempting to defend himself and to restore order after plaintiff initiated the altercation. Because Officer Smith's use of force in such a situation did not run afoul of contemporary standards of decency, plaintiff's rights under the Eighth Amendment were not abridged, and the claim against Smith will be dismissed. Hudson, 503 U.S. at 7; Whitley, 475 U.S. at 320-21.

To the extent that plaintiff's reference to a delay in treating his hand might be interpreted as an allegation that he experienced deliberate indifference to his serious medical needs, plaintiff fails to state a claim of constitutional dimension. To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). Such a claim requires two distinct elements. First, plaintiff must allege a medical need that is sufficiently serious to warrant constitutional protection. A condition is sufficiently serious if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The second component of an Eighth Amendment claim is satisfied if plaintiff alleges deliberate indifference to a serious medical need "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A prisoner's disagreement with medical personnel over the course of his treatment does not make out an Eighth Amendment cause of action. Wright v. Collins, 766 F.2d

841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990).

Here, plaintiff's allegations do not satisfy the criteria for a viable Eighth Amendment claim. As to the seriousness of his injury, plaintiff states only that his hand "appeared" broken. He has not, however, produced any evidence or even alleged that his hand was in fact broken, despite admitting that an x-ray had been taken. Compl. at handwritten p.3. Assuming without deciding that plaintiff did suffer a broken hand, his injury could have been sufficiently serious to warrant constitutional protection. See Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). However, plaintiff's allegations and exhibits belie any suggestion that prison officials were deliberately indifferent to that injury. In the report prepared the same day the incident occurred, Officer Smith noted, "Neither myself nor Inmate Cowles required any medical treatment." Despite what may have been that initial misunderstanding, plaintiff inferentially admits that he received medical attention including an x-ray of his hand within a week. Such conduct on the part of prison officials does not bespeak the actual intent or reckless disregard necessary to satisfy the subjective component of an Eighth Amendment claim. See Harden v. Green 27 Fed. App'x 173, 178 (4th Cir. Nov. 19 2001) (unpublished, available at 2001 WL 1464468) (noting that the subjective element requires a showing that defendant acted wantonly, and "at a minimum ... thought about the matter and chose to ignore it.") Under these circumstances, no Eighth Amendment claim is adequately pled with respect to plaintiff's alleged hand injury.

Plaintiff also fails to state a claim for relief against defendants Kulplinski and Arnold. To state a cause of action under § 1983, a plaintiff must allege facts indicating he was deprived of rights guaranteed by the Constitution or laws of the United States by a person acting under color of state

8

law. West v. Atkins, 487 U.S. 42 (1988). Thus, to be amenable to suit under § 1983, a defendant must have had personal knowledge of and involvement in the alleged violation of plaintiff's constitutional rights. Here, although plaintiff has sued VPRJ's Administrator Kulplinski and Captain Arnold, plaintiff does not allege, nor does anything in the complaint suggest, that those defendants personally deprived plaintiff of any right protected by the Constitution or federal law. On this record, it appears that both defendants have been sued solely in their supervisory capacities. In certain circumstances, supervisory officials may be held liable for the constitutional injuries inflicted by their subordinates. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). This liability, however, is not premised on respondeat superior, but upon a "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decision-making chain whose deliberate indifferent permitted the constitutional abuses to continue unchecked.'" Id. (quoting Slakan, 737 F.2d at 376). In order to establish supervisory liability under § 1983, there are three necessary elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted). Here, plaintiff's allegations with respect to defendants Kulplinski and Arnold fail to meet these elements, and are insufficient to state a claim against either defendant in his supervisory capacity. Thus, the claims against these defendants will be dismissed pursuant to

§ 1915A.

To the extent that plaintiff contends that he was deprived of a liberty interest when he was released from his job as a trustee, his claim fares no better. It is well established that prisoners have no constitutional right to job opportunities while incarcerated. Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980); Awalt v. Whalen, 809 F. Supp. 414, 416-17 (E.D. Va. 1992) (prisoners do not have a constitutionally-protected right to work while incarcerated, or to remain in a particular job once assigned). A prisoner has no constitutionally-protected liberty interest in any particular job assignment or work detail. Johnson v. Knable, 862 F.2d 314, 1988 WL 119136, **1 (4th Cir. 1988) (table) ("[P]rison work assignments are matters within the discretion of prison officials, and denial of employment does not, in and of itself, abridge any constitutional right of the inmate."); Olim, 461 U.S. at 250. "[T]he classifications and work assignments of prisoners ... are matters of prison administration, within the discretion of the prison administrators...." Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir.), cert. denied, 435 U.S. 1009 (1978); accord, Mitchell v. Murray, 856 F. Supp. 289, 293 (E.D. Va. 1994). Nor does an inmate's expectation of keeping a particular prison job amount to a "property" or "liberty" interest subject to protection under the due process clause. Bryan v. Werner, 516 F.2d 233, 240 (5th Cir. 1975). Here, then, plaintiff's allegations concerning the termination of his institutional trustee position do not state a claim of constitutional dimension.

Lastly, plaintiff alleges that although he was approved to received two blankets due to an air conditioning problem in the segregation unit, Sgt. Carter vindictively deprived plaintiff of the second blanket, which allegedly caused plaintiff to develop pneumonia. To establish a claim for cruel and unusual punishment due to conditions of confinement that violate the Eighth Amendment, plaintiff must allege facts sufficient to show (1) an objectively serious deprivation of a basic human need, that

is, one causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991). To meet the first prong, plaintiff must allege facts sufficient to show that the condition complained of was a "sufficiently serious" deprivation of a basic human need. Farmer, 511 U.S. at 825. Only extreme deprivations will make out an Eighth Amendment claim, and it is plaintiff's burden to allege facts sufficient to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. Hudson, 503 U.S. at 8; Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993). To meet the second prong, plaintiff must allege facts sufficient to show that defendants knew of facts from which an inference could be drawn that a "substantial risk of serious harm," was posed to plaintiff's health and safety, that they drew that inference, and then disregarded the risk. Farmer, 511 U.S. at 837. Here, plaintiff's allegation that he was deprived of a second blanket does not rise to the level of a "sufficiently serious" deprivation of a basic human need to state a claim under the Eighth Amendment. Id.

IV.

For the foregoing reasons, plaintiff's claims will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim. An appropriate Order shall issue.

Entered this 8th day of February 2011.

/s/ *signature*
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia